Michael O'ROURKE, et ux, Plaintiffs,

v.

**UNITED STATES DEPARTMENT OF JUSTICE, et al., Defendants.**

Civ. A. No. 85–1772 SSH.

United States District Court, District of Columbia.

April 25, 1988.

---

Michael Maggio, Washington, D.C., for plaintiffs.

Bradley L. Kelly, Asst. U.S. Atty., Washington, D.C., for defendants.

### MEMORANDUM OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court on plaintiffs' motion to compel a *Vaughn* index and

1. The original purpose of the instant action was to assist plaintiff in his efforts to remain in this country. Despite the subsequent deportation of

on defendants' motion to dismiss. For the reasons set forth below, both motions are denied.

### Background

Plaintiffs, Michael O'Rourke and his wife, Margie Lieb O'Rourke, brought this action to order production of what they contend are improperly withheld agency records under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. The requested records generally pertain to Michael O'Rourke's administrative detention without bond by the Immigration and Naturalization Service (INS).

Michael O'Rourke had been held for almost four years at the time this action was filed in July 1983 in the United States District Court for the Southern District of New York. In June 1984, the Supreme Court denied certiorari in *O'Rourke v. INS*, No. 83–1615, 467 U.S. 1256, 104 S.Ct. 3546, 82 L.Ed.2d 849 in which O'Rourke appealed the decision of the INS to require his deportation from the United States.[1]

### Discussion

I. Defendants' Motion To Dismiss

Defendants have moved to dismiss the complaint on two principal grounds: lack of standing and the equitable doctrine of "unclean hands."

### A. *Standing*

Michael O'Rourke is a citizen of the Republic of Ireland. Imprisoned in his own country, he escaped and made his way to the United States, which he entered under an assumed name. According to the findings of the Immigration Court, he admits his past membership in the Irish Republican Army (IRA). The criminal activities resulting in his convictions in the Republic of Ireland were undertaken on behalf of either the IRA or the Provisional Irish Republican Army (PIRA).

Defendants urge that Michael O'Rourke lacks standing due to his status as a non-

Mr. O'Rourke, plaintiffs have indicated through counsel that this action is not moot.

resident alien.[2] Under defendants' interpretation, court remedies established by the FOIA are limited to American citizens.

■ Using well-established principles of statutory construction, an interpreting court looks first to the ordinary language of a statute to determine its meaning. *See, e.g., Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Section 552(a)(3) of the FOIA requires "each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules ... and procedures to be followed, shall make the records promptly available to any person." "Person" is defined in § 551 to "include[ ] an individual, partnership, corporation, association, or public or private organization other than an agency." Section 4(B), which provides for judicial review, speaks only in terms of "the complainant." On its face, then, the statute's provisions are not restricted to citizens. It is worth noting that the Privacy Act, 5 U.S.C. § 552a(a)(2), does specify that its provisions apply only to "a citizen of the United States or an alien lawfully admitted." Congress thus distinguishes between a "citizen" and "any person" when it wishes to do so.

The Government urges, however, that the legislative history of the FOIA demonstrates clear congressional intent contrary to the plain language of the statute. While it is true that the legislative history evinces a desire to provide remedies to aggrieved citizens and to create an informed, intelligent electorate, there is insufficient evidence that citizens were intended by Congress to be the sole beneficiaries of the FOIA.

This view has been expressed by other courts faced with defining the scope of "any person." In *Stone v. Export–Import Bank of United States,* 552 F.2d 132 (5th Cir.1977), the Bank for Foreign Trade, an agency of the Soviet Union, was deemed a person within the meaning of the Act. *See id.* at 136. Although the plaintiff in *Stone* argued that Congress had intended only to protect American citizens or businesses, the Fifth Circuit found "no warrant for reading ... a limitation on the term 'person' that Congress neither put there nor demonstrated any intention to put there."[3] *Id.* at 137. And, in a case that is very similar to the one at bar, *Doherty v. Department of Justice,* 596 F.Supp. 423 (S.D. N.Y.1984), the district court did not "find a clear legislative intention to grant a right to sue to citizens rather than to persons."[4] *Id.* at 426–27 (footnote omitted).

■ The Court concludes that Michael O'Rourke was not excluded from access to government documents under FOIA due to his status as an alien. Moreover, Mrs. O'Rourke, who is a citizen, would be able to avail herself of the FOIA even if her husband could not. The Government argues that Mrs. O'Rourke should be precluded from suing because "she admittedly sought to use the Freedom of Information Act ... only to benefit her husband." *See* Letter from Thomas E. Moseley to Hon. Robert J. Ward (Aug. 10, 1984) (filed Aug. 14, 1984). Mrs. O'Rourke's motive in seeking information is irrelevant; the Act's primary purpose is to make information available to the public. "[U]nless requested material falls into one of the specific statutory exemptions, it must be made available on demand to any member of the general public." *Moorefield v. United States Secret Serv.,* 611 F.2d 1021, 1023 (5th Cir.1980); *see also*

---

**2.** Defendants' pleadings do not fully address Mrs. O'Rourke's standing to sue even if her husband is disqualified.

**3.** As the *Stone* court noted, the Comptroller General informed Congress "that use of the word 'person' in the Freedom of Information Act would bestow rights under the Act on non-Americans." 552 F.2d at 136. The Comptroller General warned that the Act's " 'language would make it mandatory for an agency to open its records to subversives, aliens ... and others

whose interests might be adverse to the Government.' " *Id.* at 136–37 n. 6 (quoting *Hearings on S. 1160 et al. before the Subcomm. on Administrative Practice and Procedure of the Senate Comm. on the Judiciary,* 89th Cong., 1st Sess., at 376 (1965)).

**4.** *Doherty* also involves a foreign citizen who escaped from prison in his home country and entered the United States on a false passport.

*NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 220, 98 S.Ct. 2311, 2316, 57 L.Ed. 2d 159 (1978).

### B. *Equitable Considerations*

■ The Government also argues that even if nonresident aliens generally have access to agency records through the FOIA, plaintiff is excluded on equitable grounds. In the Government's words, "a foreign terrorist literally seeks to rummage through Government files by resort to an action under FOIA." Memorandum of Law in Support of Government's Motion to Dismiss at 6. Although the Supreme Court has suggested that Congress did not "limit the inherent powers of an equity court" in enacting the FOIA, *Renegotiation Bd. v. Bannercraft Clothing Co.,* 415 U.S. 1, 21, 94 S.Ct. 1028, 1039, 39 L.Ed.2d 123 (1974), use of broad equitable powers is inappropriate here.[5] It is not a question of a court's ability to fashion a remedy not provided for by statute, as in *Bannercraft,* but rather a question of withholding a remedy that the statute specifically provides.

■ The statute expressly states that it "does not authorize withholding of information or limit the availability of records to the public, except as specifically stated in this section." Section 552(d). This Circuit previously has ruled on this question, finding that:

> the Act thus strikes a balance among factors which would ordinarily be deemed relevant to the exercise of equitable discretion.... Since judicial use of traditional equitable principles would upset this legislative resolution of conflicting interests, we are persuaded that Congress did not intend to confer on district courts a general power to deny relief on equitable grounds apart from the exemptions in the Act itself.

*Soucie v. David,* 448 F.2d 1067, 1077 (D.C. Cir.1971). As noted earlier, the Act focuses on whether the material should be accessible to the public and not on which members of the public should have access. Moreover, the Government has not advanced any credible arguments as to why Mrs. O'Rourke should be denied access to government records on equitable grounds.

Because this Court finds that plaintiffs should be allowed access to those agency records that would be available to any other member of the public, defendants' motion to dismiss must be denied.

### II. Plaintiffs' Motion To Compel a Vaughn Index

After careful consideration, the Court has decided to deny plaintiffs' motion to compel a *Vaughn* index without prejudice. The Court will schedule a status conference to determine the future course of this litigation.

### ORDER

This matter is before the Court on plaintiffs' motion to compel a *Vaughn* index and defendants' motion to dismiss. Upon consideration of the pleadings and the entire record, and for the reasons set forth in the accompanying Memorandum Opinion, it hereby is

ORDERED, that defendants' motion to dismiss is denied. It hereby further is

ORDERED, that plaintiffs' motion to compel production of a *Vaughn* index is dismissed without prejudice to plaintiffs' ability to renew that motion at a later time. It hereby further is

ORDERED, that a status conference will be scheduled in the above-captioned matter to set the future course of this case.

SO ORDERED.

---

**5.** *Bannercraft* focused on whether it was appropriate for a district court to issue an injunction suspending negotiations while the status of certain documents was ascertained. The Court, in dicta, suggested that the FOIA's remedies were not necessarily exclusive, given "the express vesting of equitable jurisdiciton in the district court by § 552(a)." 415 U.S. at 20, 94 S.Ct. at 1038.